# OCUMPAUGH *v.* NORTON.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.

1. In an interference case involving an improvement in voting-machines, proof of conception in November, 1894, by one of the parties, whose application was filed February 27, 1897, and construction by him, about the middle of the following month, of a full-sized machine publicly operated in the early part of the following February, shows a high degree of diligence on his part; for, having made an actual reduction to practice, it was not incumbent upon him, either to preserve his rights or demonstrate his entire good faith, that he should file an application earlier than required by the statute then in force relating to that subject.

2. Where all three tribunals of the Patent Office have agreed in their findings of fact, this court will not disturb those findings except under very unusual circumstances.

3. A device which merely illustrates the mode of mechanical construction and operation of the conceived idea, and which may be said to be an embodiment of the invention in visible form, is not necessarily a reduction to practice; for, though the device is operative as a mechanical movement, there is no certainty that it will perform its function when put to use under full conditions of practical use. (Following *Gallagher* v. *Hien, ante,* 77.)

4. Where an exhibit embodies an invention and is operative as a mechanical movement, yet various parts of the structure, which are the essence of a practical working machine, are so crude and even certain of derangement that no one would seriously consider building machines in accordance with the exhibit without further experiments, such a device is not a reduction to practice.

5. Where in an interference case the evidence was not convincing that the device under consideration, a voting machine, was capable of being used for practical purposes, and an examination of the device, in connection with the consideration of the facts of the record, including testimony to the effect that it was used in the election of directors of a certain corporation, warranted the conclusion that it was essentially an experimental device and never passed beyond that stage, it was *held* that such a device was not a reduction to practice.

6. In an interference case, where the question is one of alleged reduction to practice, the proofs tending to establish that fact must be consid-

Opinion of the Court.

ered as a whole, and the attendant circumstances must be borne in mind; and the action of the inventor with respect to the exhibited device, prior to the necessity for its use in the interference proceeding, his failure to construct other machines, or promptly file an application, and the fact that the application when filed disclosed different features from those in the exhibit,—all will tend to the conclusion that the device was not a reduction to practice, but simply an experimental device.

7. The question of whether a too rigid rule as to what constitutes a reduction to practice may not have been heretofore laid down, suggested but not considered, there being nothing in the facts of the case under consideration to call for any re-examination of the questions of law involved in the decision of what constitutes a reduction to practice.

No. 252. Patent Appeals. Submitted January 10, 1905. Decided February 21, 1905.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Benjamin R. Catlin* and *Mr. John R. Bennett* for the appellant.

*Mr. Melville Church* and *Mr. Frederick F. Church* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

This is an appeal by Charles H. Ocumpaugh from a decision of the Commissioner of Patents awarding priority to William B. Norton of an invention which is embodied in the following issue: "In a voting-machine, the combination with a series of registers, of a series of ballot-indicators forming part of the permanent structure, one for each register, freely movable into and out of co-operative relation with their corresponding registers, interlocking devices for preventing the operation of more than a predetermined number of indicators, and means for

causing the simultaneous operation of all the registers whose indicators are in operative position."

Norton is the senior party, having filed his application February 27, 1897. Upon the proofs it is established that he had a conception of the invention as early as November, 1894, and had constructed as early as the middle of December a full-sized machine, which was publicly operated in the early part of February, 1895. The testimony shows a high degree of diligence, for, having made an actual reduction to practice, it was not incumbent upon him, either to preserve his rights or to demonstrate his entire good faith, that he should file an application for patent earlier than required by the statute relating to that subject which was in force at that time.

Ocumpaugh, the junior party, filed his application May 11, 1897, something like three years after the proofs show that he had a conception of the invention, and substantially three years after his Exhibit C, which he claims as a reduction to practice, was built.

The three tribunals of the Patent Office have agreed in awarding priority to Norton.

Counsel for appellant, after stating that fact, frankly states Ocumpaugh's position. He says: "The case, therefore, comes before this court under the well-settled rule that where all three tribunals in the Patent Office have agreed in their finding of fact, this court will not disturb those findings, except under very unusual circumstances. We will, therefore, present this case solely upon the questions of law involved, for the essential facts have been found in favor of Ocumpaugh."

In view of the position thus assumed, no good purpose would be served by restating the evidence upon which the tribunals of the Patent Office have reached the conclusion that Norton was the prior inventor. It is sufficient to say that an examination of the record discloses nothing that would warrant a reversal of the findings of fact.

We will, therefore, proceed to the consideration of Exhibit C, which, viewing the case from any standpoint, is the pivot upon

which everything material, as we view the question at issue, turns.

If Exhibit C be found to be a reduction to practice of the invention, Ocumpaugh is entitled to an award of priority, for he was the first to conceive and disclose, and after such conception was diligent in constructing the exhibit referred to. In fact, no question of diligence enters into this case if the exhibit is a reduction to practice, for it was completed some five months before Norton entered the field.

If, on the other hand, the exhibit is not a reduction to practice, it is equally clear that Norton is entitled to prevail, for Ocumpaugh did nothing further tending toward or amounting to either an actual or constructive reduction until long after Norton entered the field, and he has failed to show any diligence, or to excuse in a satisfactory manner his lack thereof.

Exhibit C is a crude affair. It is admitted to be made from odds and ends,—a small packing-box, parts taken from a camera, parts of an old cash-carrier system, parts of collar-buttons, split rings for wash-vests. Ingenuity was certainly displayed in levying tribute upon the scrap-heap. These were put together in a fashion, and when united with other parts, without doubt, as the Examiners-in-Chief correctly say, served to illustrate "the mode of mechanical construction and operation of the idea which Ocumpaugh had conceived." The structure may be the embodiment of the invention in visible form, but something more than this is required to constitute an actual reduction to practice. As we have said, in the recent case of *Gallagher* v. *Hien, ante,* p. 77, mechanical perfection is not requisite for a reduction to practice but the device must show that "the work of the inventor is finished, physically as well as mentally. Nothing must be left for the inventive genius of the public." 1 Robinson, Patents, p. 183. We are far from being convinced that the exhibit proves that the invention was reduced "to a fixed, positive, and practical form." *Reed* v. *Cutter,* 1 Story, C. C. 590–599, Fed. Cas. No. 11,645. We agree with the Examiners-in-Chief that "it cannot be assumed from an examination of this device that it will certainly perform its func-

tion and when put to use under the full conditions of practical use, although it is operative as a mechanical movement."
Various parts of the structure, and such parts being of the essence of a practical working voting-machine, are so crude and even certain of derangement that no one would seriously consider building machines in accordance with the exhibit until he had further experimented with it. We refer specially to the interlocking devices and the counters or registers. In short, the evidence does not convince us that Exhibit C is a device capable of being used for practical purposes. We are rather of the opinion that it is essentially an experimental device, and never passed beyond that stage.

We are not unmindful that it is asserted that it was proven to be an operative machine by its alleged use to elect the directors of a certain corporation. Conceding its use at the time and for the purpose stated, we fail to find sufficient in the record to convince us that any test to which it was put was sufficient to demonstrate anything more than that it was "operative as a mechanical movement."

The proofs on behalf of Ocumpaugh must be considered as a whole, and the attendant circumstances of the case must be borne in mind in coming to a correct conclusion as to the weight to be given to this exhibit and what weight Ocumpaugh gave to it prior to the necessity for its use in the present interference proceedings. These circumstances may be grouped together, and when so considered they raise such a cloud of doubt that Ocumpaugh's evidence fails to overcome the presumption in favor of Norton, which follows his being the first to file an allowable application for patent.

Ocumpaugh's failure to follow up this invention in the same manner he did a later invention in the same art is a circumstance that cannot but be given some weight. Early in 1896 he filed an application for such invention, having previously made a working machine embodying that invention. Another circumstance to be taken into account is that in the winter of 1896—97 he engaged one Turpin to make drawings of the machine shown in his application involved herein, and that, instead of

giving him Exhibit C to work from, he made a new rough pencil sketch as a guide.

Again, it appears that when he came to file this application he showed in the drawings registers of different character from those used in Exhibit C, which tends to indicate that the structure, at least in that respect, was of an experimental character.

These straws taken, each by itself, prove little, but when taken together, and in the light of Ocumpaugh's testimony, which in many respects is inconclusive, coupled with his long delay in filing his application, which delay is not satisfactorily excused, would compel us, were we in doubt, to resolve such doubt against Ocumpaugh.

To reverse the award in favor of Norton would require us to depart from a long line of authorities. It may be open to argument whether, at times, a too rigid rule as to what constitutes reduction to practice may not have been laid down. There is nothing, however, in the facts of the case at bar to call for any re-examinations of the questions of law involved in the decision of what constitutes a reduction to practice. Nor is it necessary to cite any of the many decisions of this court in justification of our conclusion herein.

The Commissioner of Patents correctly awarded priority to Norton, and his decision is affirmed.

The clerk of the court will certify this opinion, and the proceedings in this court in the premises, to the Commissioner of Patents according to law.                         *Affirmed.*