**SMITH et al. v. CARTER CARBURETOR CORPORATION.**

**No. 7694.**

Circuit Court of Appeals, Third Circuit.

Argued Oct. 8, 1941.

Reargued Feb. 19, 1942.

Decided Sept. 5, 1942.

As Amended on Denial of Rehearing
Oct. 6, 1942.

Arthur H. Boettcher, of Chicago, Ill. (Charles F. Richards and Richards, Layton & Finger, all of Wilmington, Del., on the brief), for appellants.

Hugh M. Morris, of Wilmington, Del. (Herbert L. Cohen and Alexander L. Nichols, both of Wilmington, Del., on the brief), for respondent.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

This appeal is from a decree entered by the District Court in favor of the defendant in a suit under R.S. § 4915, 35 U.S.C.A. § 63, to obtain a patent. The plaintiffs had been junior party in an interference proceeding in the Patent Office where the issue involved was the right to priority of invention as limited and defined by the counts in interference. The Examiner of Interferences awarded priority of invention to the defendant's assignor and the Board of Appeals in the Patent Office affirmed the Examiner's decision. Instead of appealing from the Patent Office decision to the United States Court of Customs and Patent Appeals, the plaintiffs elected to sue in the District Court under R.S. § 4915 in the hope of obtaining a decree directing the issuance of a patent to them. On the record in the interference proceeding in the Patent Office, which was offered in evidence, and after hearing an expert witness called by the plaintiffs, the learned judge of the District Court held that the evidence adduced by the plaintiffs did not produce the thorough conviction of error necessary to overcome the findings of the Patent Office tribunals and, on the authority of Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657, dismissed the plaintiffs' complaint. The controversy arose under the following circumstances.

On April 24, 1930, one Ericson filed an application (Serial No. 446,899) for a patent for a device for a carburetor. The application eventuated on June 27, 1933, in the grant of a patent (No. 1,915,852) which Ericson assigned to Carter Carburetor Corporation, the defendant. While this application was pending, Ericson on November 6,.1931, filed as a continuation thereof in part a further application (No. 573,-418). This, too, eventuated in the grant of a patent (No. 1,915,851) to him on June 27, 1933, which he also assigned to Carter Carburetor Corporation. On December 5, 1930,.

Smith, one of the present plaintiffs, also made application (Serial No. 500,179) for a patent for a device for a carburetor. This he followed with a second application (Serial No. 505,261) on December 29, 1930, which embodied the structure shown in the first application and an improvement not here important. On April 15, 1933, Smith filed a further application (Serial No. 666,268) merely for the purpose of combining his two earlier applications. Such was the status of Smith's patent applications (whereof the corporate plaintiff, Bendix Aviation Corporation, was the assignee) at the time of the grant of the patent to Ericson. Thereafter, in order to provoke an interference, Smith filed a further application (Serial No. 724,282) on May 7, 1934, as "a continuation in whole of my co-pending application, Serial No. 666,268, filed April 15, 1933", and into which he copied verbatim five claims of the Ericson patent (No. 1,915,851) save for omitting a limitation in one of those claims. Concededly the Ericson claims recite elements of float chamber mechanism and idling arrangement in the fuel conduit with which Smith's earlier applications were not concerned. The plaintiffs deemed necessary the inclusion of more in Smith's last application (Serial No. 724,282) than he actually intended to claim in order to produce the interference and at the same time to comply with an administrative requirement of the Patent Office that every element of the claims of the invention in issue be shown. It is the plaintiffs' contention that Smith's invention covers an "automatic choke" to be adapted to any conventional carburetor; that Ericson's first claim to that construction was in his application (No. 573,418) on November 6, 1931, subsequent to Smith's two earlier applications; and that the Ericson application of April 24, 1930, did not disclose the principle of the "automatic choke". For the purposes of this case, it seems unnecessary, as it will later appear, to consider any more than Ericson's first application.

The plaintiffs argue that the expert evidence adduced at the trial below was of such weight and character as to overcome the findings of the Patent Office tribunals and that, in no event, did the early patent application of Ericson disclose the invention covered by the counts in interference.

In the circumstances, it seems appropriate to consider the latter contention first.

Obviously, if the Ericson patent application of April 24, 1930, did not disclose the invention covered by the counts in interference, then the findings of the Patent Office would be so clearly erroneous as to require that they be set aside (2 Walker on Patents (Deller's Ed.) § 210, p. 949), for it was upon the basis of the early Ericson application that the Patent Office tribunals awarded him priority of invention.

While the primary question in interference proceedings is the determination of priority of invention, other pertinent questions may be incidentally involved. Hendrickson & Nelson v. Ronning & Ronning, Cust. & Pat.App., 76 F. 2d 137, 140. Among such, is whether the same or substantially the same invention is claimed by the contending parties. 2 Walker, supra, § 191, p. 895; Dooley Improvements, Inc., v. Central Hanover Bank & Trust Co. of New York, D.C.D. C., 28 F.Supp. 531, 533, 534 (a proceeding under R.S. § 4918, 35 U.S.C.A. § 66). The interference proceeding in the Patent Office, which R.S. § 4904, 35 U.S.C.A. § 52 authorizes, presupposes respective claims by two or more adverse parties to substantially the same patentable invention and the proceeding is carried on for the purpose of determining the question of priority of invention as between them. 2 Walker, supra, § 189, p. 889. We have then to consider whether the early Ericson application disclosed the invention covered by the counts in interference.

As the learned court below stated it, "The invention in issue relates to an improvement in carburetors whereby the richness of the fuel mixture is increased during the starting or running of the engine while it is cold. This improvement also includes means responsive to increases in heat and suction to reduce the richness of the fuel mixture as the engine becomes warmer, or when the suction developed by the engine increases."

The five counts in interference based on the claims common to the Ericson patent (No. 1,915,851) and the Smith application (Serial No. 724,282), in part here material, are as follows:

"1. In a carburetor, * * * a fuel conduit leading from said fuel supply chamber * * *, said fuel conduit having a low speed branch, * * * said fuel conduit having an inlet located below the fuel level in said constant level fuel

chamber, said mixing conduit having an air inlet, a valve in one of said inlets, and means responsive to both temperature and suction for controlling said valve.

"2. In a carburetor, ' * * * a fuel conduit leading from said fuel supply chamber * * *, said fuel conduit having a low speed branch, * * * said fuel conduit having a fuel inlet and said mixing conduit having an air inlet, valve means for controlling one of said inlets, said valve being operable to vary the proportions of fuel and air delivered by said carburetor, and means responsive to both temperature and suction for operating said valve to mixture enriching position when both the suction and the temperature are low, and for operating said valve in an opposite direction to lean out said mixture when either the temperature or the suction increases.

"3. In a plain tube carburetor, means forming a mixing conduit, an air inlet and fuel inlet for said mixing conduit, * * * and valve means for controlling at least one of said passages in accordance with both temperature and suction for starting purposes when the operating temperature is below normal.

"4. In a plain tube carburetor, * * * air inlet and fuel inlet for said mixing conduit, * * * a valve for controlling one of said inlets to enrich the mixture whenever the temperature is below normal, heat responsive means for operating said valve, said valve being constructed and arranged to be directly acted on by suction, when it is in mixture enriching position, and being displaced by suction in a direction to cause a leaner mixture to be delivered by the carburetor.

"5. In a carburetor, * * * an air inlet and an air chamber between said inlet and outlet, a manually operable valve between said air chamber and said outlet, * * * valve means for controlling the richness of the mixture delivered by said carburetor, means responsive to both heat and suction for operating said valve to lean out the mixture at high temperatures and suctions and enrich said mixture at low temperatures and suctions, and a suction connection leading from a point in said mixing conduit posterior to said first-named valve for operating said mixture controlling valve."

The early Ericson application (Serial No. 446,899) recited that it related "to carburetors and more particularly to thermostatic controlling devices for carburetors". It stated that an object of the invention was to provide a thermostatic controlling device for varying the mixture of fuel and air with the temperature. It was also stated in the original application before any amendment [1] that,—

" * * * When the temperature is low, as when starting up on a cold morning, the thermally controlled element * * * is bent * * * to permit additional fuel to enter the passageway and to enrich the mixture thereby * * * approximately 12 per cent. * * * When the engine reaches normal operating temperature, heat from the engine is conducted * * * to the carburetor * * * thereby warming the fuel * * * and the thermally controlled element * * * bends * * * and closes * * * the orifice * * *.

"When the fuel in the main tank is very cold and the car is operated at high speed, the temperature in the bowl will again fall, due to the rapid rate of flow of the cold fuel into the bowl. This, however, will not cause the thermally controlled element * * * to open the end of the passageway * * *, except under extreme cold conditions, because the suction will hold the member * * * in closed position."

The structure disclosed by the description and specifications of the early Ericson application contained two inlets for the conduit through which the fuel was drawn from the bowl of the carburetor into the mixture chamber. One of these inlets (the smaller) was subject to control by a thin bimetallic strip which would close the opening of that inlet whenever the temperature of the fuel was increased from the heat of the motor or whenever the high speed of the motor created sufficient suction to draw the metallic strip toward and over the opening. The air inlet to the mixture chamber could be controlled only by a hand-operated mechanism. It is conceded that this mode of operation would vary the amount of fuel entering the mixture chamber only by approximately 12%. Admittedly it was not the most efficient method of operation. Nevertheless the mechanism would work for the intended purpose even though crudely. Such operation has been

---

[1] See Chicago and N. W. Railway Company v. Sayles, 97 U.S. 554, 563, 24 L.Ed. 1053.

held to be sufficient for patent purposes on a question of disclosure. Hildreth v. Mastoras, 257 U.S. 27, 34, 42 S.Ct. 20, 66 L. Ed. 112.

■ The plaintiffs contend that since the choke (mechanism for varying the amount of air entering the mixture chamber) had to be operated by hand, the Ericson application did not disclose the invention in issue. Actually what the plaintiffs question is the structure chosen by Ericson to carry out his purpose. It is well settled that an inventor need not choose the most efficient mode of carrying out his invention. If such were the requirement, many patents would be of little value as protection against disclosure. While an inventor is required to describe what he conceives to be the best mode for carrying out his idea, he is not confined to that. Continental Paper Bag Company v. Eastern Paper Bag Company, 210 U.S. 405, 418, 28 S.Ct. 748, 52 L.Ed. 1122; The Telephone Cases (Dolbear v. American Bell Tel. Co.), 126 U.S. 1, 536, 8 S.Ct. 778, 31 L.Ed. 863; Tilghman v. Proctor, 102 U.S. 707, 728, 26 L.Ed. 279; Winans v. Denmead, 56 U.S. 330, 15 How. 330, 342, 343, 14 L.Ed. 717; 2 Walker, supra, § 163, p. 750.

■ Ericson did what the patent laws require of an inventor. He explained the principle of his invention and what he considered the best mode of applying that principle. R.S. § 4888, 35 U.S.C.A. § 33. The fact that he did not choose what subsequently turned out, in practice, to be the best structure for applying his principle did not serve to render his disclosure worthless. The Telephone Cases, supra, 126 U.S. at page 538, 8 S.Ct. 778, 31 L.Ed. 863; Blanchard v. Eldrige, C.C.E.D.Pa., 3 Fed.Cas. page 622, No. 1,509. Ericson perceived and described the proper approach to the problem, viz., a mechanical device which, as activated by engine temperature or automatic mechanical suction, would enrich or thin out the fuel mixture supplied the engine according to change in the engine temperature and suction. The Supreme Court said in The Telephone cases, supra, 126 U. S. at page 533, 8 S.Ct. at page 781, 31 L. Ed. 863: "The patent for the art does not necessarily involve a patent for the particular means employed for using it. Indeed, the mention of any means, in the specification or descriptive portion of the patent, is only necessary to show that the art can be used; for it is only useful arts —arts which may be used to advantage— that can be made the subject of a patent."

The plaintiffs argue that the "automatic choke" is the invention in issue. Upon consideration it seems evident that that is not the invention but merely an adaptation of the principle shown by the invention. To what mechanism is the "automatic choke" applied? In the final analysis by "automatic choke" the plaintiffs mean a mechanical device which works automatically to increase or decrease the amount of air entering the mixture chamber of a carburetor of an internal combustion engine, thereby enriching or thinning the fuel mixture in response to changes in engine temperature and suction. But the automatic enrichment or thinning out of the fuel mixture in the carburetor by changes in engine temperature or suction was the principle which Ericson disclosed in his early application.

■ The claims of the patent are to be read in the light of the disclosure of the specifications, not to restrict the invention to the precise structure disclosed, but in order to grasp the principle of the invention so as to measure properly the range of equivalents. Flowers v. Magor Car Corporation, 3 Cir., 65 F.2d 657, 658; 2 Walker, supra, § 261, p. 1243. An improver, too, is entitled to a reasonable range of equivalents measured by the advance he has made over older machines and is not limited to the specific mode of application claimed and described unless such limitation is necessary. Davis Sewing Mach. Co. v. New Departure Mfg. Co., 6 Cir., 217 F. 775, 783; 2 Walker, supra, § 267, p. 1256, and cases there cited. It would seem that Smith's structure, which utilized engine temperature and suction in controlling the air flow to the mixture chamber rather than the fuel flow, comes within the range of equivalents of the Ericson invention. See Flowers v. Magor Car Corporation, loc. cit. supra; McDonough v. Johnson-Wentworth Co., 8 Cir., 30 F.2d 375, 384; Pittsburgh Water Heater Co. v. Beier Water Heater Co., 3 Cir., 228 F. 674, 677; cf. also Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 569–573, 18 S.Ct. 707, 42 L.Ed. 1136.

■ In the instant case, two or more persons claimed substantially the same invention. The Patent Office was therefore justified in declaring the interference. We come then to the plaintiffs' contention that the expert testimony adduced at the trial in the District Court was of sufficient weight

560

and character to overcome the findings of the Patent Office tribunals. At the outset there is a presumption that the parties to an interference made the invention in issue in the order of the dates of filing their respective applications disclosing the invention. The applicant filing first (the senior party to the interference) has a *prima facie* case of priority which entitles him to a decision in his favor unless it is overcome by a proper weight of evidence for the applicant filing second (the junior party to the interference). Consequently, the burden is upon the junior party to proceed first with the taking of testimony. And, while a preponderance of the evidence is sufficient to enable the junior party to overcome the senior party's *prima facie* case of priority, where the senior party has already received a patent, the evidence in support of the junior party's right to priority must be so strong as to remove all reasonable doubt thereof. 2 Walker, supra, § 199, pp. 916, 917. Further, where all of the tribunals which pass upon a question of priority in an interference proceeding in the Patent Office reach the same conclusion with respect thereto, a court will not overrule that conclusion unless error therein appears very clearly. 2 Walker, supra, § 210, p. 949. As stated by the Supreme Court in Morgan v. Daniels, supra, at p. 125, the prior decisions on issues involved in a suit under R.S. § 4915 will not be set aside unless the contrary is established by testimony which in character and amount carries thorough conviction. In the opinion of the learned judge below, who saw and heard the expert witness, the testimony thus adduced for the plaintiffs did not measure up to the standard required.

Fundamentally, the question before us is whether the District Court erred in confirming the Patent Office's award of priority of invention to Ericson under the counts in interference. From what we have already said it is apparent that the answer to that question must be in the negative if the rule of Morgan v. Daniels is to be respected in full integrity. See Lorenz v. Colgate-Palmolive-Peet Co., 3 Cir., 122 F.2d 875, 877. The evidence in this case carries far less than thorough conviction of error in the decision either of the Patent Office or of the District Court. This conclusion does not, however, operate to impute any validity to the defendant's patent or approval of the claims thereof as drafted. The patentability of the defend-

ant's invention is not before us. Nor may the patent thereof granted by the Commissioner be invalidated or revoked in a proceeding under R.S. § 4915. See Illingworth v. Atha, C.C.N.J., 42 F. 141, 144. Consequently, we may not consider in this proceeding the question whether Ericson was entitled to the broad claims allowed him (in the interference) which cover not only the means responsive to both temperature and suction which his early application disclosed as operative in the fuel inlet but also the similar means operative in the air inlet which Smith was the first specifically to disclose.

The decree of the District Court is affirmed.