**MINNESOTA MINING & MFG. CO. et al. v. VAN CLEEF et al.**

**No. 8315.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 31, 1943.

Casper Wm. Ooms, of Chicago, Ill., and Robert I. Coulter, of St. Paul, Minn., for appellants.

Fred Gerlach and Norman H. Gerlach, both of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This is an action to determine priority of invention under R.S. § 4915, 35 U.S.C.A. § 63. The issues involved relate to claims 1, 2, 3, and 4 of United States patent No. 2,084,878 to Van Cleef, issued on June 22, 1937, on an application filed May 25, 1936, and afterwards assigned to appellees. The patent is on pressure sensitive adhesive tape.

On January 3, 1938, appellant Tierney, an employee of the appellant company, filed his application for a patent upon the same subject matter, and on the same day assigned his interest in the application and his alleged invention to his employer. This application contained claims 18, 19, 20 and 21, which were identical respectively with appellees' claims 1, 2, 3 and 4. An interference was declared, and after a hearing the Examiner of Interferences rendered his decision on March 27, 1939, in favor of Tierney on the four counts, holding that Tierney's reduction to practice was on December 28, 1934, and that of Van Cleef was on January 5, 1935. Van Cleef appealed to the Board of Appeals of the Patent Office which, on November 17, 1939, affirmed the award of priority to Tierney. From that ruling Van Cleef appealed to the Court of Customs and Patent Appeals, which, on April 14, 1941, reversed the prior determination, holding that the early work of Tierney prior to January 5, 1935, did not constitute a reduction to practice, but was merely an abandoned experiment. Van Cleef v. Tierney, 28 C.C.P.A., Patents, 1039, 118 F.2d 911.

The case at bar was instituted and tried in the District Court of the United States, in the Eastern Division of the Northern District of Illinois. It made special findings of fact and stated its conclusions of law thereon favorable to appellees, and rendered its judgment dismissing the action on the merits. From that judgment this appeal is prosecuted.

■ We are first confronted with a jurisdictional question. Appellees in their answer alleged that this action was no longer authorized by section 4915 of the Revised Statutes, the same question of priority having been decided between the same parties by the United States Court of Customs and Patent Appeals. The District Court overruled appellants' motion to strike this defense from the answer, but entered judgment dismissing the complaint on the merits. The question of jurisdiction is still before us. The same question was decided adversely to appellees' contention in Wettlaufer v. Robins, 2 Cir., 92 F.2d 573. We agree with the reasoning and the conclusions of that opinion, and we hold that the District Court here had jurisdiction.

The subject matter of the Van Cleef patent and Tierney's application is a pressure sensitive adhesive tape, referred to by the parties as pliofilm tape. The complaint contained four counts, all being upon the article respectively described in the claims above referred to. The primary question here presented is whether the production and testing by Tierney of his pliofilm tape on December 28, 1934, was a reduction to practice, or merely an abandoned experiment. If that production and testing was in fact a successful reduction to practice, he is entitled to the patent, for it occurred about one week prior to that of Van Cleef. If otherwise, Van Cleef is entitled to it, for it is not denied that his reduction to practice occurred on January 5, 1935.

The claims upon which the counts are based involve an article, not a process nor a method. The article is referred to as a pressure sensitive adhesive tape, the general type of which, since 1930, was and still is manufactured by appellant company as its commercial product. Such tapes are very thin yet they comprise three layers or coats,—the base, the adhesive, and the bonding coat which binds the adhesive to the base. The only difference between the commercial tape of appellant company, sold as Scotch Cellulose Tape, and that specified by the counts is that the former has a base of regenerated cellulose, known as cellophane, instead of pliofilm, as specified in the counts. Pliofilm is rubber hydrohalide. Its tendency is to stretch and curl under tension. The adhesive in both the patent and appellants' commercial product is the same.

For many years the appellant company, in making tapes of this general type, had used cellophane as a base, and it is conceded that it is one of the largest manufacturers of such tapes in America, and had enjoyed and was continuing to enjoy a noteworthy commercial success with respect thereto. Notwithstanding that success, cellophane as a base was known by appellants to have eight objectionable features which are specifically set forth in Tierney's application for this patent. They are referred to in the opinion of the Court of Customs and Patent Appeals, supra, 28 C.C.P.A., Patents, 1039, 118 F.2d page 914, and will not be repeated here. It was under those circumstances that Tierney's alleged reduction to practice was had in the following manner. He secured a roll of pliofilm, 28 inches wide and 60 yards long. It was coated on the same production machine that appellants utilized for the manufacture of cellophane tape. "The pliofilm was primed with our P-3 primer, which was a mixture of rubber reclaim, milled crepe rubber, rosin, whiting, and solvent. After the primer was dried a transparent rubber resin pressure sensitive adhesive in solution form was coated on top of the primed pliofilm. The solvent was driven off by passage of the coated web through our tape oven and the dried coated backing was wound up in jumbo roll form and removed to the slitter where it was slit into narrow widths." The same materials were used and in the same manner as those used by appellants in the manufacture of their cellophane tape, except that in the former they used pliofilm for the base instead of cellophane.

The object of Tierney, as stated in his application, and specifically referred to in the opinion of the Court of Customs and Patent Appeals, supra, was to produce an article which would eliminate the defects of the cellulose base tape and retain its virtues, one of which, among many others, was transparency. In his application he says that he accomplished those objects by his accompanying disclosures. The test disclosed that there was considerable stretch to the pliofilm, so that the original web of 60 yards in length became a tape of 122 yards in length. This was due to the tension applied by the machine on which it was coated. The edges were curled up, ragged and irregular to the extent that out of the original width of 28 inches they were able to secure from the center of the film a tape 122 yards long and variously estimated by the parties making the test to be from 9 to 12 inches in width. Of this they

cut a strip, 6 to 8 inches in width, from the center of the tape, which they slit into narrower strips as samples of the test. It was very distensible; it had a great deal of static in it; it was cloudy in appearance, a sort of dark green rather than the crystal clear appearance of cellophane. It showed a tendency to wrinkle more than cellophane. It stretched considerably when unwinding it from the roll, and it showed a milkiness when put under tension. It was tested for its adhesiveness and for its aging life and in both respects it was reported as good, but in both respects it was subnormal. These were the only tests made prior to the appellees' reduction to practice on January 5, 1935, and no other tape was made by appellants under the claims in issue prior to that time, hence no acts of further reduction to practice by appellants, subsequent to January 5, 1935, can be considered in aid of appellants' alleged reduction on December 28, 1934.

After their experiment on that date, appellants laid the matter aside and filed no application for a patent thereon until January 3, 1938, which was more than six months after the patent had issued to appellees on June 22, 1937, of which issuance appellants had full knowledge. Under these circumstances appellants assumed the very heavy burden, and it is still on them, of proving beyond a reasonable doubt that their experiment of December 28, 1934, amounted to a successful reduction to practice, which was never abandoned by them. That is the primary question before us.

There can be no doubt that appellants and those who assisted in and observed the test were not satisfied with the result. They were seeking a tape backing which might successfully compete with cellophane, and possibly become a substitute for it. Some of them said it was a very good tape, some said it was not as good as cellophane, and others said it had great possibilities, but they did nothing in the way of a further reduction to practice until after January 5, 1935. However, it is fair to say that Tierney and his helpers were instructed by appellant company to continue their research and tests of pliofilm for the purposes above referred to. This we think they continued to do, for in Tierney's application, filed January 3, 1938, he states:

"This invention relates to adhesive coated materials in the form of tapes * * * wherein the backing element comprises a rubber derivative * * * characterized by being impervious to and insoluble in water, and wherein the adhesive coatings applied to such backings are preferably water insoluble and normally nondrying.

"With respect to the characteristics of adhesive tapes * * * made according to this invention, reference is particularly made to materials for use as: a removable and re-usable adhesive tape, surgical tape, transparent surgical tape, frost shield tape, transparent packaging tape, masking tape, ceramic tape, electrical insulating tape, can sealing tape, tape to replace viscose covering on bottles, book binding tape, repair tape, and in general may be applied to any analogous purpose to which a protective wrapping, covering, or splicing might apply.

"One of the desirable characteristics of such adhesive tapes is that it have a *high degree of transparency,* such as is obtained where the rubber derivatives hereinafter disclosed are used in the form of films for the backing material. In previous tapes of this nature, known to me, the backing material has been a derivative of cellulose * * *. The cellulose derivatives while they have *the desired transparency* do not have the required structural strength * * *. Furthermore, such * * * derivatives as cellulose nitrate are highly inflammable. Films of regenerated cellulose are not of themselves sufficiently moisture-proof * * *, and while various processes are known * * * for treating these films to render the same moisture-proof to a degree, yet even when so treated the backing is not sufficiently impervious to moisture to form a satisfactory backing under certain conditions, from the standpoint of moisture-proofness, flexibility, toughness, transparency, resistance to corrosion and other qualities to be hereinafter noted, and furthermore, such moisture-proofing processes increase the technical difficulties of manufacture of such tapes and the *cost* of the same. I have found that the defects inherent in materials heretofore used have been substantially eliminated by the use of materials herein disclosed." (Our emphasis throughout.)

There is no doubt that the tape made by appellants on December 28, 1934, responds to the claims of the patent. The claims, of course, were written for that purpose, and long after the alleged earliest reduction to practice by either the appellants or appellees. It must be borne in mind, however, that in the discussion of priority of reduction to practice, we are not con-

cerned with the validity or the invalidity of the patent or any of its claims, unless priority be awarded to appellants. The primary question is, did appellants made a successful reduction to practice on December 28, 1934, and if so did they abandon it? The latter they could do for any reason sufficient to themselves, either by affirmative action, or by inaction for an unreasonable length of time, or by both. In answering the question we may look not only to appellants' conduct subsequent to December 28, 1934, but also to the objects they desired to attain by that experiment, and also the degree of success of those attainments, if any, as a result thereof.

■ It is quite clear from the specification that appellants, on December 28, 1934, desired to produce an article which would do more than merely respond to those very broad claims, which at that time were not in existence. Claims of such nature are primarily intended to widen, so far as possible, the legitimate field of the inventor's activities in order to more narrowly limit his competitors' approach to the inventor's preferred embodiment of his disclosure. So we find in Tierney's application, filed three years after appellants' alleged reduction to practice, a lengthy recital of the virtues of pliofilm tape, none of which, of course, are recited in the claims, and any one or more of which, standing alone, of course, would not prevent the article from conforming to the claims. Those virtues are merely descriptive of the beneficial and advantageous uses of appellants' preferred embodiment. To be sure a patentee need not perceive or state all the advantages of his invention, and it is possible that appellants on December 28, 1934, did not perceive all the advantages recited in the application. However, we think this is very improbable, because the advantages recited in the application are either those possessed by a cellulose base or are corrective of the faults of such a base.

■ On December 28, 1934, appellant company had been engaged rather extensively in the manufacture and sale of tape with a cellulose base for almost four years, and we think it is fair to assume, in the absence of evidence to the contrary, that appellants at that time were fully aware of all of its virtues and its faults. Under these circumstances we have what we regard as reasonable doubts that appellants successfully reduced the invention to practice prior to January 5, 1935, and under the

evidence we cannot say with assurance that they did not abandon the results of their first experiment. We cannot say how few of the recited uses and merits, if less than all, would have caused appellants to feel justified in applying for a patent within a reasonable time after December 28, 1934. That was a matter for them alone to determine at that time, or within a reasonable time thereafter, based upon the disclosures of their first reduction to practice. We can now determine that fact only by a consideration of their stated objects, the results of that experiment and the subsequent conduct of appellants with respect thereto.

The Court of Customs and Patent Appeals thought that appellants should have made tests of the product of December 28, 1934, for the recited uses and merits other than the life-age and adhesive tests, and appellees now urge the same objection. Appellants, in response thereto, contend that the invention is so simple and its recited uses are so manifest that further tests were useless. This is no doubt true as to some of the recited uses, but as to others we think it is not true, or at least we have serious doubts of that fact which we regard as reasonable. For instance, it was regarded by those making the test that the pliofilm stretched too easily when under tension. The uncontradicted evidence was that tension would tend to give the pliofilm a milky or cloudy color, and that excessive tension would tend to render the film ineffective. It is fair to say, however, that the same witness said that the pliofilm then used had not been excessively stretched, although it had been streched from 60 yards to 122 yards in length and had a milky or clouded color. Another said it had a sort of dark green color rather than the crystal clear appearance of cellophane. As we have stated above, Tierney said in his application that one of the desirable characteristics of such tapes is that it have a high degree of transparency, such as is found in cellulose derivatives. That characteristic certainly was not found in the product of the first test.

Furthermore, in Tierney's application he refers to the matter of costs of production as being a proper matter for consideration in fabricated tapes. Counsel for appellants in his brief informs us that the cost of pliofilm is far in excess of that of cellophane. In this connection we note that the roll of pliofilm which appellants used in their first test contained a little more than

46 square yards. From this amount there were from 6 to 10 square yards lost in the experiment. The uncertainty as to this amount is due to the variation of the witnesses as to the amount of the pliofilm tape which was used. This fact may have had no decisive bearing on appellants' conduct in deferring the filing of their application, but it is entitled to be considered, with all other pertinent circumstances, in determining appellants' intentions as to abandonment.

Moreover, appellants' position now is that the simple invention claimed by Tierney comprises no more than a substitution of a film of pliofilm for a film of cellophane, and that that invention was completed and reduced by his test on December 28, 1934. As bearing upon the question of abandonment, they refer to the fact that the appellant company was the assignee of the United States Patent to Strauch, No. 2,-164,359, issued July 4, 1939, on an application filed on May 18, 1936, which preceded the Van Cleef application by one week. It was cognizant of the contents of that application and the patent was issued to it. This patent discloses the use of pliofilm as a base for adhesive tape. That fact of course discloses, as appellants suggest, that they were still interested in the use of pliofilm as a base for such tape, and that they had not abandoned the intention of eventually using it for such purpose. It might also disclose the fact that they thought they had not successfully reduced the Tierney invention to practice on December 28, 1934. This may or may not be true, but it naturally causes a doubt to arise in our minds as to what appellants really thought they had accomplished by that first test of the Tierney disclosure. They now insist, as we understand them, that if the first test disclosed the fact that they could successfully use pliofilm as a base for any of the purposes set forth in their declaration, the reduction would be complete. If this be a proper construction of their intention, then there would be less reason for their delay in filing an application. Many of those uses could be accomplished by the use of cellophane and there would be no rational use for a substitute for it. There is no contention here that Strauch reduced his invention to practice prior to Tierney or Van Cleef, and consideration of that patent is only material as bearing on the question of appellants' abandonment.

Appellants further contend that the District Court erred in refusing to admit expert testimony as to the fitness of the article they produced on December 28, 1934, for the several uses for which it was made. It was offered for the purpose of informing the court on that particular subject. The ultimate question to which it related and which the court was to determine was whether there had been a successful reduction to practice, and some of the testimony no doubt involved technical information which might have been quite helpful to the court in answering the ultimate question. Under such conditions we think such testimony is generally proper, but it is a matter largely within the discretion of the court as to whether he shall admit it, and unless his ruling amounts to an abuse of discretion, it is not error. Of course, the court is not bound by such testimony, if it is contrary to the facts. We have considered the facts offered to be proved, and we find no question which sought to elicit the ultimate fact as to whether there had been a successful reduction to practice, and we think there would have been no error on the part of the court if the offered testimony had been admitted. However, we have no hesitancy in saying that if it had all been admitted it would not have dissipated our doubts with respect to this reduction to practice. None of this evidence thus offered would tend to prove that this product was of the desired transparency or was not inclined to stretch too much. We are inclined to think that the District Court had the same opinion, and the error, if any, was harmless.

Furthermore, if the invention which was claimed to be reduced to practice on December 28, 1934, was so simple, and its virtues were so glaringly apparent, we are unable to understand why there was such delay in filing an application for the patent. In this respect, however, appellants say that the delay, was in a great measure due to death, sickness and the absence from this country of certain of their attorneys. Such matters are always to be considered seriously and with the spirit of helpfulness, but under the circumstances here presented we are convinced that such facts do not furnish an excuse for such unreasonable delay.

Appellants rely on Corona Cord Tire Co. v. Dovan Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610, in support of the

proposition that the reduction to practice of an invention can be completed by production of the article and the testing of it by an inexact practical test showing its operative character to a man skilled in the art, and of the further proposition that the invention need not be followed by commercialization to establish its completion, and that no abandonment can be presumed merely from the lack of commercialization. With those principles we are in complete accord. However, the test here in issue disclosed the defects above referred to which causes us to doubt that there was a successful reduction to practice, or that appellants thought there had been. While an invention need not be followed by commercialization to establish its completion, yet we feel that the reduction to practice should be sufficient to warrant the parties to commercialize the product within a reasonable time if they so desire. From these facts, in connection with appellants' delay, we are not convinced beyond reasonable doubt that there was a successful reduction to practice by appellants on the date claimed, or that the result of that experiment was not clearly abandoned.

The decree of the District Court is affirmed.