S. & S. CORRUGATED PAPER MA-
CHINERY CO., Inc., v. GEORGE W.
SWIFT, JR., INC.

Nos. 9768, 9790.

United States Court of Appeals
Third Circuit.

Argued April 8, 1949.

Decided Aug. 5, 1949.

Samuel Ostrolenk, New York City, Sidney G. Faber, New York City (Ostrolenk & Faber, New York City, Osborne, Cornish & Scheck, Newark, N. J., on the brief), for plaintiff.

Kenneth S. Neal, New York City (McCarter, English & Studer, and James R. E. Ozias, Newark, N. J., on the brief), for defendant.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

These are cross-appeals arising out of a patent controversy which had its beginnings in the Patent Office. The Board of Interference Examiners determined that as between Shields, who assigned to the plaintiff, S. & S. Corrugated Paper Machinery Co., Inc., and Morrison, who assigned to the defendant, George W. Swift, Jr., Inc., the latter was entitled to a patent on the mechanism involved on the ground that he was the prior inventor. Plaintiff then commenced this action in the district court pursuant to R.S. Section 4915, 35 U.S.C.A. § 63,[1] and the defendant filed a counterclaim alleging infringement.

In this Court, the questions for disposition are (1) whether Shields, the senior party, exercised diligence in the actual reduction to practice of his invention, and (2) whether a license agreement executed by and between plaintiff and defendant is operative as a defense to defendant's claim of infringement.

The invention involved is a mechanism whose purpose is to enable the cutting, in predetermined lengths, of corrugated paper while it is in continuous motion.[2] Shields filed his application on February 17, 1938, and on June 4, 1940, a patent, No. 2,202,-872, was issued covering thirteen of his claims. Morrison, the junior party, filed his application on March 4, 1938, and on September 24, 1940, a patent, No. 2,215,762, was issued covering five of his claims. Shields then filed an application for reissue on August 20, 1941, adopting therein as his own certain claims of Morrison's, Shields maintaining that he was the prior inventor. As a consequence, an interference was declared.

It is the general rule of patent law that an inventor is entitled to his date of conception as the date of his invention, provided he is diligent in reducing his invention to practice, either actually, or constructively by the filing of an application. And the necessity for diligence begins just prior to the time his rival enters the field. I Rivise and Caesar, Interference Law and

[1] "Whenever a patent on application is refused by the Board of Appeals or whenever any applicant is dissatisfied with the decision of the board of interference examiners, the applicant, unless appeal has been taken to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal or decision; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, * * *."

[2] As described by the Board of Interference Examiners: "The subject matter of this interference relates to a cutting machine of the continuously driven type for cutting various predetermined lengths from a continuously moving web, constructed to have at the time of cutting a component of motion in the direction of travel of the material being cut. The actuating mechanism for said cutter includes rotary driving and driven members having parallel but eccentric axes. A link is pivotally connected to each of said driving and driven members at points spaced from their respective axes, and one of said members is carried by a normally stationery support. Said support, however, is adjustably mounted for movement in a path transverse to the axes of rotation of the driving and driven members to regulate the amount of eccentricity of these axes and thereby regulate the speed of the cutter. These parts of the machine are so constructed and arranged that the support may be adjusted while the machine is running."

Practice (1940), Chapter XIII. The Board of Interference Examiners accorded Morrison March 12, 1937, as the date of his conception and constructive reduction to practice, for on that date he had filed a provisional application in Great Britain. Shields was accorded the conception date of February 8, 1937, and, although he contended before the Board and the court below that he was entitled to an earlier actual reduction to practice, both tribunals found that he did not achieve an actual reduction to practice prior to January, 1938. That issue is not disputed here. However, the Board found, and the district court agreed, that Shields was not entitled to priority because, during the critical period, he was lacking in diligence from about June, 1937, to December, 1937, in the reduction of his invention to practice. It is from the concurrence of the district court in this finding that the plaintiff appeals.

■■■■ The Patent Office decision presents itself as a particularly heavy unit of weight which the evidence of the plaintiff in the district court must counterbalance: it is the rule that "where the question decided in the Patent Office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction." Morgan v. Daniels, 1894, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657. We have heretofore applied this rule in a variety of instances.[3] The question before us is whether the learned trial judge committed clear error in confirming the Patent Office decision. United States v. United States Gypsum Co., 1948, 333 U.S. 364, 394-395, 68 S.Ct. 525, 92 L.Ed. 746; Smith v. Carter Carburetor Co., 3 Cir., 1942, 130 F.2d 555, 560. We think the answer must be in the negative

if Morgan v. Daniels, supra, is to be applied effectively.

■■■ The plaintiff introduced into evidence in the district court the record it made before the Board of Interference Examiners, and adduced additional testimony as well. We consider both records together. General Talking Pictures Corp. v. American Tri-Ergon Corp., 3 Cir., 1938, 96 F.2d 800, 811. But we do not find any substantial difference. It is clear that Shields was employed by the plaintiff solely for the purpose of working on the project which resulted in the invention in controversy. Moreover, the plaintiff was in great need of a new mechanism to replace the hydraulic cut-off machine it was then using. By June, 1937, Shields had brought his experimental machine up to the point where he was satisfied that the principle was sound, but he still had to adjust the machine in order to meet the requisites for commercial use. There was testimony that between June and September, 1937, he was awaiting delivery of a small gear, and was engaged generally in testing his experimental model and in calculating new relations between various parts of the machine to secure the best performance. Both the Board and the district court considered this latter evidence too general to rely upon. Further, Shields maintained that in October, 1937, his machine was approved by Stern, then the plaintiff's president, who instructed him at that time to proceed to adapt the invention to a hydraulic machine which the plaintiff had installed in the plant of one of its customers, Superior Paper Products Co. A design drawing dated December 15, 1937, was introduced in evidence, and Shields stated that, on the basis of this document, he began to work on the adaptation about two months before, that is, in October. However, the Superior hydraulic machine was first operated on October 21, 1937, and the Board was of the

[3] Westinghouse Electric & Mfg. Co. v. DeForest Radio Tel. & Tel. Co., 3 Cir., 1927, 21 F.2d 918, affirmed 1928, 278 U. S. 562, 49 S.Ct. 34, 73 L.Ed. 507; General Talking Pictures Corp. v. American Tri-Ergon Corp., 3 Cir., 1938, 96 F.2d 800; Century Distilling Co. v. Continental Distilling Co., 3 Cir., 1939, 106 F.2d 486; Lorenz v. Colgate-Palmolive-Peet Co., 3 Cir., 1941, 122 F.2d 875; Smith v. Carter Carburetor Corp., 3 Cir., 1942, 130 F.2d 555; Minnesota Mining & Mfg. Co. v. Carborundum Co., 3 Cir., 1946, 155 F.2d 746.

opinion that it was not probable that the decision to replace it was made before that date. In addition, Stern was called as a witness before the Board, but did not verify Shields as to the date of his approval; Stern did not testify in the district court; there was testimony that Superior did not complain about the hydraulic machine immediately; and it appears that a patent attorney was not called in to view the Shields experimental machine until early in December. The Board, therefore, did not fully accept the oral testimony as to the work done on the Shields machine prior to December, 1937. The district court agreed, finding that the oral testimony adduced before it was doubtful.

 The plaintiff, nevertheless, insists that the evidence requires a finding of diligence as a matter of law. But diligence in this field is historically a question of the conduct of the inventor, or other party who bears that burden, under the circumstances peculiar to his case. To attempt a legal formula would be travail without recompense.[4]

 Here, the plaintiff has not offered any excuse for delay; rather, it contends that there was ample work on the invention between June and December, 1937. The difficulty with this argument is simply that the plaintiff was unable to convince the Board that the work which it asserts was done was actually accomplished. As we have said, the evidence in the court below was not substantially different from that before the Board. We cannot say that it is of such character and amount as to produce the clear conviction that the Board made a mistake and that the learned trial judge committed clear error.

There being an absence of thoroughly convincing evidence of the extent of the plaintiff's and Shields' activities for a period of approximately six months, we conclude that the decision of the district court on this score must be affirmed.

 The second issue herein constitutes the subject of the defendant's appeal. In answer to the defendant's counter-claim for infringement of the Morrison patent, the plaintiff set up an agreement dated August 1, 1941, in which the parties extended licenses, with limitations, to each other. In Clause 1 of the agreement, the plaintiff, under all present and future patents as to which it then had or would have the power, granted to the defendant an irrevocable license to use the claims of the Morrison, and other, patents with this reservation: " * * * that no rights are included in this license in respect to cut-off machines wherein the position of a shaft which transmits power to the cut-off knives is adjusted by a member acting to position such shaft selectively at various points along an arcuate path and thereby conforming the cutting speed of the knives to the speed of travel of the material being cut, it being understood that the respective rights and obligations of the parties with respect to such last mentioned cut-off machines are the same as if this Agreement had never been entered into; * * *"

This proviso, it may be noted, reads on the priority dispute between Shields and Morrison which we have discussed above. In Clause 2(a), the defendant, under all present and future patents as to which it then had or would have the power, granted to the plaintiff an irrevocable license to use the claims of the Shields, and other, patents, but made no reservation comparable to that quoted from Clause 1. It is the contention of the defendant that the reservation in Clause 1 must be read into Clause 2(a), or, at least, it should be read as controlling that clause. This construction of the agreement the learned District Judge refused to adopt.

The defendant urges that the agreement must be construed as a whole, that the two clauses should not be judged independently of each other, and that the "understanding" in the proviso applies to both clauses: being specific, it controls the general language. But to interpolate the res-

---

[4] A sufficient definition, for the purposes of this case is stated in Eclipse Machine Co. v. E. Krieger & Son, Inc., 2 Cir., 1937, 87 F.2d 755, 757: "Diligence consists in reasonable effort directed toward embodiment of an invention in physical form or toward filing an application for the patent."

362

ervation into Clause 2(a) is to modify the agreement under the guise of construction. The two clauses are independently clear and precise as to what each party named intended to give up to the other. Except for the reservation, the clauses are verbatim duplicates, allowance being made for difference in the names of the parties and the patents to which reference is made. There is here no evidence of intent other than as evidenced by the agreement itself. Defendant does not assert oversight or mistake. Indeed, it appears that the agreement was first drafted without the reservation, which was then inserted in Clause 1 with specific instructions that Clause 2(a) should remain as it stood and as it now reads. The conclusion is ineluctable that Clause 2(a) is, and was intended to be, a license by the defendant without the limitation here in controversy.

For the reasons stated, the judgment of the district court will be affirmed.