## RADIO CORPORATION OF AMERICA
and
### United States of America
v.
## INTERNATIONAL STANDARD ELECTRIC CORPORATION.
### No. 11756.

United States Court of Appeals
Third Circuit.
Argued March 6, 1956.
Decided April 19, 1956.

Stephen H. Philbin, New York City, William H. Foulk, Wilmington, Del. (John Farley, New York City, James L. Whittaker, Floyd M. Harris, Princeton, N. J., on the brief), for appellant.

Ralph B. Stewart, Washington, D. C. (William S. Potter, Berl, Potter & Anderson, Wilmington, Del., Edward D. Phinney, C. Cornell Remsen, J. Pierre Kolisch, Rayson P. Morris, New York City, on the brief), for appellee.

1. D.C.D.Del.1955, 134 F.Supp. 593.

2. 35 U.S.C.A. § 146; 37 C.F.R. § 1.303 (a), § 1.304 (1955). R.C.A. is the as-

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This is a proceeding to determine priority between two claimants for a patent. It is brought under section 146 of the Patent Act of 1952, 35 U.S.C.A. § 146 and is what used to be called a "4915 proceeding." The senior applicant won in the patent office and in the district court [1] and R.C.A., the junior applicant, brings the case here on appeal.

Two points are involved. The first has to do with jurisdiction; the second, the correctness of the conclusion as to priority reached in the patent office and the district court. We dispose of the jurisdiction matter first.

## I. Jurisdiction.

After having lost before the Board of Patent Interferences on September 28, 1953, R.C.A. commenced the present action on November 18, 1953, well within the sixty days provided in the statute.[2] In 1954 it was discovered that R.C.A. had assigned the application to the United States on February 15, 1939. International Standard Electric Corporation (I.S.E.C.), the defendant in the 4915 proceeding, makes the point that the government was, as assignee, an indispensable party. Defendant further argues that since it was not made a party to this suit until November 24, 1954 the action is not brought within the statutory period and must fail for that reason.

We think the district court properly decided that this point is not well taken. The authority the court relied upon was our own decision in Paper Container Mfg. Co. v. Dixie Cup Co., 3 Cir., 1948, 170 F.2d 333, certiorari denied 1949, 336 U.S. 909, 69 S.Ct. 515, 93 L.Ed. 1074. The court in the opinion in that case discusses the timeliness of a suit brought without joining the Reconstruction Fi-

signee of the patentee, Wolff, and that assignment dates September 27, 1938.

nance Corporation to whom the patent in that case had been assigned for security. The conclusion was that since the plaintiff was the real party in interest the action was timely brought.

The same holds true in this case a fortiori.[3] It clearly appears that the assignment to the government was for the purpose of maintaining secrecy "as affecting the armament or defense of the United States" and not for any interest which the government acquired in the patent application other than for security purposes. R.C.A. is spoken of as the "owner" in the document in which the assignment was made and we think that was unmistakably the true intent of the parties.

## II. Priority Question.

R.C.A. is the junior applicant. I.S.E.C. is the assignee of the interest in a French patent secured by a man named Gloess. His filing date in this country was September 22, 1938 but priority is claimed because of a French filing date of October 2, 1937.[4] R.C.A.'s application as assignee of Wolff was filed on September 30, 1938.

R.C.A., as junior applicant, depends upon a claimed reduction to practice to establish priority over I.S.E.C. If the claim can be maintained, R.C.A.'s point is well taken. But neither the Board of Patent Interferences nor the district court thought it could be so maintained.

On this appeal we quite obviously do not approach the question de novo, even with the help of appellant's very clear presentation both in this Court and in the district court. The junior applicant had the burden of proof in the patent office of establishing its reduction to practice by a preponderance of the evidence.[5] It is not claimed that the burden was any greater than that. But the Board of Patent Interferences, presumably expert in such matters, decided against R.C.A. in a thoughtfully considered opinion. Then when the question moves to the district court, while the case is heard de novo, we have the strict injunction laid down by Morgan v. Daniels, 1894, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657, that the patent office's finding is not to be disturbed unless there is "thorough conviction" that a mistake has been made. The force of Morgan v. Daniels has been repeatedly recognized by this Court.[6] When the case comes to this Court we are not to substitute our view of it for that of the district court unless the latter's conclusion was "clearly erroneous" under rule 52(a), 28 U.S.C.A.[7] Of course, we must exercise our own judgment. But our own judgment is not as to the original merits of the case but the reasonableness of the conclusion reached by those who have handled it before it came here.

The case in this Court involves but one count of the three originally in the interference proceeding. The other two have been dropped. The application has to do with a radar system and for an indicator providing both for distance and direction. The count reads as follows:

"A radio vision device including in combination means for radiating radio energy toward a reflecting object, means for receiving said energy after reflection from said object, means for deriving directly from said reflected energy informa-

---

3. The statute says that "Any party to an interference * * *" may bring the suit. 35 U.S.C.A. § 146; see also 37 C.F.R. § 1.303(a) (1955).

4. Rev.Stat. § 4887, 35 U.S.C. § 32 (1946) [1952 Revision, 35 U.S.C.A. § 119].

5. See Diamond v. Woodyard, 1951, 186 F.2d 729, 734, 38 C.C.P.A., Patents, 816, and cases cited therein.

6. S. & S. Corrugated Paper Mach. Co. v.

George W. Swift, Jr., Inc., 3 Cir., 1949, 176 F.2d 358, 360; Sanford v. Kepner, 3 Cir., 1952, 195 F.2d 387, 389, affirmed Nov. 10, 1952, 344 U.S. 13, 73 S.Ct. 75, 97 L.Ed. 12 (reduction to practice claim); Etten v. Lovell Manufacturing Co., 3 Cir., 1955, 225 F.2d 844, 848, certiorari denied, 1956, 350 U.S. 966, 76 S.Ct. 435.

7. S. & S. Corrugated Paper Mach. Co. v. George W. Swift, Jr., Inc., supra note 6.

tion including the angular position of said object and the distance of said object as a function of the velocity and the transit time of said energy, and an indicator for combining said information to indicate the angular position and distance of said object."

■ There is no doubt that Dr. Irving Wolff who was in 1936 and 1937 in charge of a section of R.C.A.'s research projects in radio had been interested in this problem for some little time. The testimony shows conferences between himself and his immediate superiors in R.C.A. research on the subject and the testimony leaves little doubt that the way to accomplish the object which Dr. Wolff had in mind was pretty well thought out by him before the operation which took place on June 22, 1937. Indeed, the Board of Patent Interferences found that the apparatus which Dr. Wolff designed apparently met the requirements of the count. Nobody, however, claims that this is enough.[8]

■ There has been built up a considerable amount of case authority upon what constitutes a reduction to practice. We find no disagreement among the decisions; indeed, the language of them all seems to us to express the same idea in different ways.[9] We think it is clear that reduction to practice does not mean that whatever is being worked upon has to be in shape to be commercially marketable.[10] On the other hand, it must be a demonstration that the inventor's idea works, not that he has thought the matter out and devised something that ought to work and may work but actually something that will work to accomplish its intended purpose. Neither party in this litigation, we think, would disagree with this concept of reduction to practice.

■ The whole case for R.C.A. depends upon an event which took place on June 22, 1937. Dr. Wolff and his helper, George W. Leck, set up an apparatus on top of one of R.C.A.'s buildings in Camden, N. J. There they proceeded to operate the apparatus and to sight objects near at hand and vessels in motion on the Delaware River. Mr. Leck kept a notebook, Dr. Wolff operated the ma-

8. "The structure may be the embodiment of the invention in visible form, but something more than this is required to constitute an actual reduction to practice. * * *" Ocumpaugh v. Norton, 1905, 25 App.D.C. 90, 93.

9. "The efforts of the inventor must have passed beyond experiment, beyond the reach of possible or probable failure, must have attained certainty by embodiment in the intended form, and must be capable of producing the desired result; for where experiments have inspired hope of future achievement of the purpose for which they were designed, they still fall short of reduction to practice * * *." Wickers v. McKee, 1907, 29 App.D.C. 4, 13.

The "invention * * * [must have] * * * been tested so far as to make sure that it will operate under service conditions. * * * [A] test under service conditions is necessary in those cases, and in those only, in which persons qualified in the art would require such a test before they were willing to manufacture and sell the invention, as it stands. * * *" Sinko Tool & Manufacturing Co. v. Automatic Devices Corp., 2 Cir., 1946, 157 F.2d 974, 977.

"While it is true that reduction to practice does not require a device embodying the invention to be mechanically perfect, or a commercial success, its practical efficacy and utility must be demonstrated. * * *" Van Auken v. Cummings, 1931, 49 F.2d 490, 492, 18 C.C.P.A., Patents, 1250.

"Actual performance is required of the function for which the machine is intended with a quality, extent, and character of operation sufficient to indicate its utility in the environment in which it is contemplated to be useful. * * *" Field v. Knowles, 1950, 183 F.2d 593, 601, 37 C.C.P.A., Patents, 1211. See also Sanford v. Kepner, 3 Cir., 1952, 195 F.2d 387, 389, affirmed Nov. 10, 1952, 344 U.S. 13, 73 S.Ct. 75, 97 L.Ed. 12; Ocumpaugh v. Norton, supra note 8.

10. Boucher Inventions v. Sola Electric Co., 1942, 76 U.S.App.D.C. 160, 131 F.2d 225, 226, certiorari denied 1943, 318 U.S. 770, 63 S.Ct. 762, 87 L.Ed. 1140; Minnesota Mining &. Mfg. Co. v. Van Cleef, 7 Cir., 1943, 139 F.2d 550, 556; Van Auken v. Cummings, supra note 9.

chine. If what they did that day was enough to reduce the invention to practice they win. Otherwise, they cannot, because after this day's operation the apparatus was dismantled and Dr. Wolff and his associates turned their attention to something else.

We think there is support for the findings of fact of the district court through which it came out with no "thorough conviction" that the patent office had erred. It is pointed out that there is no contemporaneous evidence in the way of photographs, circuit diagrams or significant pieces of equipment used. It was pointed out that the explanation given for the immediate dismantlement of the apparatus following June 22, 1937, was "as competent to show a satisfactory step in an experiment then being conducted" as it was to show reduction to practice. It was pointed out too, and we have checked the testimony in the record, that while the finder located buildings, smokestacks and so on, the reliability of the measurement was far from satisfactory. Indeed, Mr. Leck admitted his data would put a smokestack fairly well out into the middle of the Delaware River.

Testimony additional to that given to the Board of Patent Interferences was produced in the district court. Much of it was by people high in the research end of R.C.A. One witness, Mr. Clement, was no longer with R.C.A. but had occupied an important post there as Vice President in Charge of Research and Engineering in 1937. These witnesses were highly competent and we have no doubt thoroughly honest. They have distinguished records in the world of scientific engineering. But they were talking at the trial in 1955 about events in 1937 in an industry which was growing by leaps and bounds and which was necessarily very busy in the war effort for the years which followed. We think that a trier of the fact is entitled to give greater emphasis to what people did back in 1937 than to their explanation of it in 1955.

A number of other facts shown in the evidence tend to support the conclusions reached both in the patent office and district court. The claimed invention was talked about as something to use on ships and large airplanes. Despite the obvious differences in the conditions on top of an office building and that on a moving ship at sea or in an airplane there was no experimentation done in either place. The board points out that Dr. Wolff's "disclosure of invention" in 1937 which is essentially the disclosure of his patent application contemplated a three dimensional picture and the June 22 operation did not produce any such picture. This same disclosure contemplated intensity modulation and what was done in June was done by deflection modulation. There was considerable delay in filing the application for a patent. This is explained by R.C.A.'s patent lawyer, Mr. Clarence D. Tuska, by the fact that there were many applications in this general field to be made by him and they could not all be made simultaneously. Nevertheless, the delay existed. No disclosure of this invention was made to the Navy people although R.C.A. had hoped to get a Navy contract for exploration in this field. The Navy was interested in something close to this invention.

The veil of secrecy had been put over the results of experiments in the radar field for reasons of national security. All these considerations, no one of which is to be relied on exclusively, do tend to support a conclusion that this work was put aside in favor of problems more pressing the answer to which gave promise of being more profitable.

We think it is not unreasonable on the part of the district court to fail to come to a thorough conviction that the work on June 22, 1937, did not constitute a reduction of Dr. Wolff's idea to practice.

The judgment of the district court will be affirmed.