29 C.C.P.A.(Patents)

### HAINSWORTH v. PHILIPP.

#### Patent Appeal No. 4570.

Court of Customs and Patent Appeals.

June 1, 1942.

Wm. T. Hedlund, of New York City (Edmund A. Fenander, of New York City, of counsel), for appellant.

Watts T. Estabrook, of Washington, D. C. (Donald B. Waite, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

The senior party Hainsworth appeals from a decision of the Board of Appeals of the United States Patent Office in so far as it affirmed a decision of the Examiner of Interferences awarding priority of invention of the subject matter defined in counts 3 and 4 to the junior party Philipp.

The interference involves the application for a patent for a mechanical refrigerator of appellant, filed April 17, 1935 as a renewal of application Serial No. 623,323, filed July 19, 1932 and an application of appellee for a patent for refrigeration apparatus, Serial No. 737,539, filed July 30, 1934.

The counts are as follows:

"3. Refrigerating apparatus comprising in combination a cabinet having a shell enclosing a compartment for the storage of food to be refrigerated, a chamber for holding a secondary refrigerant in good thermal contact with the shell enclosing the food storage compartment, means providing a condensing chamber for said secondary refrigerant, and a readily removable primary cooling element associated with said condensing chamber for condensing said secondary refrigerant.

"4. A refrigerator comprising a cabinet having a compartment, a lining of heat conducting material forming the inner wall surface of said compartment, a sealed system for heat transfer fluid having a heat absorbing portion and a heat rejecting portion, said heat absorbing portion being in thermal contact with said lining so that heat from air in said compartment flows through said lining to said heat absorbing portion, and a removable cooling element in heat exchange relation with said heat rejecting portion."

The preliminary statement of appellee alleges that he conceived the invention, made a written description thereof, disclosed it

to others August 11, 1930 and that he reduced the invention to practice on or about that date.

Appellee took testimony. Appellant having taken no testimony is confined to his filing date of July 19, 1932 for conception of the invention and constructive reduction to practice.

The subject matter in issue relates to mechanical refrigerators having a primary and a secondary refrigerating system. The secondary system is in good thermal contact with the walls of the food chamber and comprises a condensing chamber located higher than a communicating evaporating chamber. As the heat from the food chamber passes through the walls thereof the low boiling point liquid refrigerant contained in the evaporating chamber rises in the form of gas into the condensing chamber where it is liquefied by means of the primary system and flows back into the evaporating chamber by gravity. The primary system is supplied with circulating liquid refrigerant by conventional means. Both of the counts require that the primary cooling element be. removable and so positioned as to absorb heat from the condensing chamber.

The Examiner of Interferences did not award a date of conception to appellee but held that he had reduced the invention to practice at least as early as the last of April 1931. The Board of Appeals, in affirming the decision of the Examiner of Interferences awarding priority of invention to appellee as to the counts here involved, held that appellee "established conception of the principle involved" in August 1930.

It appears that on August 11, 1930 appellee, who was during the times mentioned herein director of research of the Kelvinator Division of the Nash-Kelvinator Corporation of Detroit, Michigan, made two sketches clearly setting out the principle of refrigeration by means of primary and secondary systems as defined in the counts. On those sketches the principle is clearly explained in writing by appellee. The sketches were shown to have been explained to the subscribing witnesses thereof. The sketches disclose a cabinet lining, a sealed system comprising an evaporating chamber and a communicating condensing chamber, secondary refrigerant in thermal contact with the back of the cabinet lining and a primary cooling element resting on the condensing chamber "which can be removed with unit from top, side or front of the cabinet". In our opinion the said sketches considered together with the testimonial record establishes that appellee conceived the invention on August 11, 1930.

Under direction of appellee several refrigerator cabinets with secondary liners and removable primary evaporators were built, among which was one received in evidence, Exhibit 5. That was a standard cabinet then being made by the Kelvinator Corporation, assignee of appellee, and converted into a secondary liner. In that exhibit the secondary evaporator part is attached to and covers over the side and back wall liners of the food storage chamber and the secondary condenser part is attached to and covers the top liner of the storage chamber. A movable element described as the primary evaporator or cooler rests on the top of the condenser portion of the secondary system. That exhibit clearly meets all of the structural limitations of the counts.

The controversy here is, as is set out in the brief of appellant, "whether the evidence on behalf of Philipp is sufficient in law to prove a reduction to practice of the invention in issue prior to Hainsworth's filing date".

It appears that Exhibit 5 was completed in the fall of 1930. It was assembled by two employees of the Kelvinator Company under the direction of appellee. All of the tests that were made on that exhibit and other cabinets not in evidence, were under the close supervision of appellee.

Extensive tests on Exhibit 5 were subsequently made and continued during the spring of 1931 by operating the refrigerator in a room with temperatures of 80° and 100° F. Circular charts operated by Bristol's Recording Thermometers were placed in the food or storage compartment, near the top and the bottom thereof. Those charts indicated the storage chamber temperatures at the top and bottom thereof. Several charts are in evidence and it appears that the first formal test was on March 30, 1931 and that the tests continued into June of the same year.

The record shows by the testimony of appellee that temperatures of 35° to 50° F. in the storage chamber of a refrigerator are considered satisfactory for food storage purposes. The tests herein conducted over a long period of time show temperatures within that range, except in scattered instances, when the temperature rose above

50° caused apparently by opening of the doors for inspection, changing charts or doing work on the box.

It appears that some confusion arose over the identity of the primary evaporator element used in Exhibit 5 during the tests. Appellee in effect stated that the primary element in that exhibit at the time he testified was the one used in the tests of that exhibit and his corroborating witness to the tests, a refrigeration engineer, also stated in his direct examination that he remembered the same primary element and that "We did quite a lot of work on these primaries". Under cross examination the corroborating witness testified that the tests were not all run with the same primary evaporator, that there were several of those evaporators made and that he could not state the structure of Exhibit 5 as it was present during the taking of testimony was the exact structure including all parts represented by any of the test data in evidence. On redirect examination the witness identified another primary element which was received in evidence as Exhibit 8. It was shown by that witness that Exhibit 8 was also used in the tests on the cabinet of Exhibit 5. It may be that doubt is engendered as to which of the two primary evaporator elements was used in the tests relied upon. However an examination of the two evaporators discloses that they are of substantially identical construction in all material respects, so that in view of the close similarity between them and because of the long lapse of time between the testing and giving of testimony, the confusion, if any, is understandable.

In any event, it is our opinion that it is immaterial as to which of the two primary evaporators was used in the said tests. They are both flat rectangular elements of the same size, both function in the same intended fashion, in the same place, in the same cooperation with the secondary system. We therefore cannot agree with the contention of appellant that corroborating evidence as to the tests was insufficient.

We are of opinion that the tests made upon the device of appellee fully demonstrated its practical utility and that appellee has been properly awarded priority of invention of the subject matter of counts 3 and 4.

The mere fact that appellee filed applications and was granted a large number of patents, said to be in the refrigeration art, between August 1931 and July 1934 is not of itself sufficient to warrant us in concluding that his work was an abandoned experiment. In view of our conclusion that appellee actually reduced to practice the invention defined in the counts herein, his later inactivity and delay in filing his present application is not material. There is no proof of actual abandonment, suppression or concealment of the invention. Rhinevault v. Pfiester, 65 F.2d 161, 20 C.C.P.A., Patents, 1112; Brogden et al. v. Henry, 69 F.2d 978, 21 C.C.P.A., Patents, 1043; Altorfer et al. v. Haag, 74 F.2d 129, 22 C.C.P.A., Patents, 806.

The decision of the Board of Appeals is affirmed.

Affirmed.